

# THE ATTORNEY GENERAL

## OF TEXAS

**AUSTIN 11, TEXAS**

**JOHN BEN SHEPPERD**
**ATTORNEY GENERAL**

October 2, 1956

Honorable Harvey C. Hooser, Jr.        Opinion No. S-215
County Attorney of Howard County
Big Spring, Texas                      Re: Party candidates for the
                                           office of district clerk
                                           in the general election sub-
                                           sequent to the occurrence of
Dear Mr. Hooser:                           a vacancy therein.

Your request for an opinion reads in part as follows:

"The District Clerk of Howard County passed away September 9, 1956, leaving a vacancy after the Democratic Primaries and after the County Conventions. The office of District Clerk was not up for election this year. The District Judge properly appointed a District Clerk until the next general election.

"Question No. 1: Under the circumstances, can the Democratic Executive Committee name and certify a Democratic nominee for the office of District Clerk and have the name of such nominee placed upon the official ballot for the General Election to be held on November 6, 1956?

"Question No. 2: If the name of a Democratic nominee cannot be printed on the official ballot, and regardless of whether or not one or more properly have their name printed on the official ballot as an independent candidate, should the office of District Clerk, without the name of a nominee, be printed on the official ballot under each political party?"

District clerks received a four-year term at the general election in 1954 (Tex. Const. Art. XVI, Sec. 65), and consequently an election for the regular term is not being held this year. A vacancy in the office of district clerk is filled by appointment of the district judge until the next general election, at which time an election is held to fill the remainder of the unexpired term. Art. 1895, Vernon's Civil Statutes.

The authority of party executive committees to make nominations is contained in Articles 6.04, 8.22, and 13.56 of Vernon's Texas Election Code. Article 8.22, authorizing the proper executive committee to choose a nominee where a deceased candidate in the first primary receives a majority of the votes, obviously has no application here. Article 13.56 reads:

"A nominee may decline and annul his nomination
by delivering to the officer with whom the certificate
of his nomination is filed, ten (10) days before the
election, if it be for a city office, and twenty (20) days
in other cases, a declaration in writing, signed by
him before some officer authorized to take acknowledg-
ments. Upon such declination (or in case of death of
a nominee), the executive committee of a party, or a
majority of them for the State, district or county, as
the office to be nominated may require, may nominate
a candidate to supply the vacancy by filing with the
Secretary of State in the case of State or district offi-
cer, or with the county judge, in the case of county or
precinct officer, a certificate duly signed and acknowledged
by them, setting forth the cause of the vacancy, the name
of the new nominee, the office for which he was nominated
and when and how he was nominated. No executive com-
mittee shall ever have power of nomination, except where
provided for by law."

This article authorizes the county executive committee to name
a substitute nominee for a county or precinct office where there is a
vacancy in the nomination, as distinguished from a vacancy in office.
It does not authorize the executive committee to name an original nomi-
nee, either for a full term or for an unexpired term, even though a
vacancy in the office occurs too late for an original nomination to the
unexpired term to be made in the primary elections. Gilmore v. Waples,
108 Tex. 167, 188 S.W. 1037 (1916). If a vacancy in office occurs in
sufficient time for persons to become candidates in the primary election,
a party nomination for an unexpired term which is to be filled at the
next general election may be made at the primary. Cf. Kilday v. Germany,
139 Tex. 380, 163 S.W.2d 184 (1942). If the vacancy occurs too late for
nomination in the primary, the party may supply a nominee by some other
method agreeable to party usage and not prohibited by law. Brewster v.
Massey, 232 S.W.2d 678 (Tex. Civ. App. 1950); cf. Williams v. Huntress,
272 S.W.2d 87 (Tex. Civ. App. 1954). In the event the nominee died or
declined the nomination, Article 13.56 would authorize the executive
committee to name a substitute nominee, but it does not authorize an
original nomination in any circumstances.

Article 13.56 provides that "no executive committee shall ever
have power of nomination, except where provided for by law." The only
other provision authorizing an executive committee to make a nomination
for the general election is found in the last paragraph of Article 6.04 of the
Election Code, which provides:

"If a state or district official who is serving a four (4)
or a six (6) year term should die or resign on the even
numbered year in which he is not a candidate, after the

> filing date of the first primary election and before the
> printing of the ballot for the general election, the state
> committee for each political party in the case of state
> officers and the appropriate district committee for each
> political party in the case of district officers shall have
> the power to name a nominee for such position and to certify
> the name to the proper election board to have the name
> printed on the general election ballot. . . . "

This provision, which was added to the law in 1951, authorizes
the state or district committee to make an original nomination for an
unexpired term in a state or district office, but it does not confer any
power of nomination on a county executive committee, or on any com-
mitee to make a nomination for a county office. We think it is quite
clear that the office of district clerk is classified as a county office, both
under the laws relating to elections and under the laws generally. Tex.
Const., Art. V, Sec. 24; Duclos v. Harris County, 291 S.W. 611 (Tex.Civ.
App. 1927); Opinions of the Attorney General, Vol. 371, p. 805 (1936);
Att'y Gen. Op. V-329 (1947).

It is suggested that the phrase "state or district official" in
Article 6.04 should be extended to include county and precinct officials,
whose terms have now been increased to four years by the constitutional
amendment adopted in 1954. It might be argued that there appears to be
no reason for making a distinction between state and district offices on
the one hand and county and precinct offices on the other hand, and that the
legislative intent in enacting the amendment to Article 6.04 was to provide
for nominations in all offices having terms of four or six years. In 1951
the office of county superintendent of public instruction carried a term of
four years, and yet we think it is evident that at the time this provision
was enacted it plainly excluded any construction which would have per-
mitted a county executive committee to name an original nominee for a
vacancy in that office. Is there any more basis for now extending the pro-
vision to cover nominations for unexpired terms in other county offices be-
cause of the subsequent increase in the length of their terms, on the theory
that the legislative intent was to provide for filling nominations in all
offices carrying four-year terms?

We do not find any ambiguity or uncertainty in the language of
Article 6.04 which would admit of a construction to include county offices.
It is only where the wording of a statute gives rise to ambiguity, or the
grammatical construction is doubtful, that courts can exercise power of
controlling the language to give effect to what they suppose to have been the
real intention of the legislature. Where the language used in a statute is
plain and unambiguous, subtle or forced constructions are not admissible
to limit or extend the meaning of the language employed, so that where
the words used have acquired a definite meaning in law they must be expounded
accordingly and the courts cannot speculate upon the intention of the legis-
lature. Fire Ass'n of Philadelphia v. Love, 101 Tex. 376, 108 S.W. 158 (1908);

Board of Insurance Com'rs v. Guardian Life Ins. Co., 142 Tex. 630, 180 S.W.2d 906 (1944); Sparks v. State, 76 Tex. Crim. 263, 174 S.W. 351 (1915). It is not the duty of the courts to supply omissions in the law, and a court cannot write into a statute something obviously not contained therein under guise of statutory construction. Gilmore v. Waples, supra; Estes v. Terrell, 99 Tex. 622, 92 S.W. 407 (1906); Evans v. Terrell, 101 Tex. 167, 105 S.W. 490 (1907); City of Fort Worth v. Westchester House, 274 S.W.2d 732 (Tex.Civ.App. 1934, error ref. n.r.e.).

In the absence of specific amendment, a statute must be given the meaning which it had when enacted. Manry v. Robison, 122 Tex. 213, 56 S.W.2d 438 (1932). A statement of the rules applicable to the extension of the meaning of a statute to include new situations which have arisen since its enactment is found in 50 Am. Jur., Statutes, § 237:

> "§ 237. -- Application to New Cases, Conditions, and Subjects. --Since the words of a statute must be taken in the sense in which they were understood at the time when the statute was enacted, and the statute must be construed as it was intended to be understood when it was passed, statutes are to be read in the light of attendant conditions at the time of their enactment. A new meaning may not be given the words of an old statute in consequence of changed conditions. The fact that events probably not foreseen by the legislature have occurred does not permit the court to undertake to enact new law. Indeed, new things may arise, which are not regarded within the meaning of a statute, although they are within the terms thereof. It does not follow, when a newly invented or discovered thing is called by some familiar word, which comes nearest expressing the new idea, that the thing so styled is really the thing formerly meant by the familiar word. Of course, if the terms of the statute are not broad enough to include the new thing, it is not within the statute.

> "On the other hand, the fact that a situation is new, or that a particular thing was not in existence, or was not invented, at the time of the enactment, does not preclude the application of the law thereto. The language of a statute may be so broad, and its object so general, as to reach conditions not coming into existence until a long time after its enactment. . . . " (Emphasis added.)

If Article 6.04 had provided, for example, that the appropriate executive committee should have the power of nomination where a vacancy was created by the death or resignation of any official serving a term of four or six years, the fact that a county office did not carry a term of that length at the time of enactment would not prevent its inclusion upon subsequent change in the term. But where the language of the statute is not

broad enough to include the office, the meaning of the statute cannot be extended to include the changed conditions. In those circumstances, correction must be through legislative action. In 50 Am. Jur., Statutes, § 307, it is said:

> ". . . The general rule that a statute is to be construed with reference to its manifest object does not apply where such object is defeated by the language of the statute. In this respect, it has been declared that the purposes of a statute must be supposed by the courts to be satisfied and expressed by its words, and that where the meaning of the law is evident, arguments based upon unexpressed purposes of the legislation, or the mischiefs intended to be remedied, to justify searching for new terms and interpolating them into the statute, are futile. Where a law is plain and unambiguous, responsibility for its failure to fulfil an expected object ought to be left to its legislative creators."

In the light of the foregoing authorities, your first question is answered in the negative.

Our understanding of your second question is that it relates merely to the form of the ballot at the general election to be held on November 6, 1956. We assume that the county election board has determined that the vacancy occurred in sufficient time for an election on that date to be valid and has concluded that the office should be listed on the ballot. It is settled that a person may be elected by write-in votes in the general election, and the fact that no name of a candidate for the office was printed on the ballot would not prevent election by means of write-in votes where the office was properly subject to being filled at that election. Your question is whether the office should be listed under the party columns, as well as under the write-in column, where a party nomination has not been made.

Article 6.05 of the Election Code provides in part:

> ". . . The tickets of each political party shall be printed on one ballot, arranged side by side in columns separated by a parallel rule. The space which shall contain the title of the office and the name of the candidate shall be of uniform style and type on said tickets. At the head of each ticket shall be printed the name of the party. . . .

> "Where a party has not nominated a full ticket, the title and name of those nominated shall be opposite the same office of the full ticket. In the write-in column the titles of the officers shall be printed in all blank spaces to correspond to a full ticket. . . . "

Prior to 1951, the last-quoted paragraph read (Article 2980, V.C.S.):

"When a party has not nominated a full ticket, the titles of those nominated shall be in position opposite the same office in a full ticket, and the titles of the offices shall be printed in the corresponding positions in spaces where no nominations have been made. In the blank columns and independent columns, the titles of the offices shall be printed in all blank spaces to correspond with a full ticket."

Formerly the title of the office was required to be printed in the party column where no nomination had been made, but it is now provided that the title and name of the nominee shall be opposite the same office of the full ticket, with no provision for listing the title in the party column where a nomination has not been made. We interpret the present wording to mean that the title of the office is not required to be printed under a party column where a party nomination has not been made; but the write-in column should list the titles of all offices to be voted on. The purpose of the change probably was to simplify the ballot form and to facilitate the marking and counting of the ballots by eliminating unnecessary listing of titles where nominations had not been made. A voter still has the privilege of voting for the candidate of his choice by writing the name of the candidate under the office in the write-in column. It has always been the design of the law that the names of all write-in candidates be written in the write-in column, regardless of whether they were members of a party having a column on the ballot. Art. 2981, V.C S.; Art. 6.06, Election Code. Under the former law it was held that ballots having the name written in under a party column should be counted for the candidate where the intent of the voter was clear, and it is our opinion that the vote should also be counted if the voter wrote in both the title of the office and the name of the candidate under the party column, where his intent was clear. Moore v. Plott, 206 S.W. 958 (Tex.Civ.App. 1918). But in making up the ballot form the election board should now list in the party columns only those offices for which a party nomination has been made. However, it is our opinion that this provision is directory and that the listing of an office under the party column where a nomination had not been made would not affect the validity of the election, and, further, that a write-in vote under the party column should be counted where the intent of the voter is clear.

As already observed, the title of the office should be printed under the write-in column on the ballot. Candidates may also run as independent or nonpartisan candidates. If anyone has complied with the requirements for becoming an independent candidate, the title of the office and the name of the independent candidate (or candidates) should be printed under the independent column; otherwise, the title of the office should not be printed under that column.

## SUMMARY

The county executive committee of a political party is

not authorized to name an original nominee for the unexpired term of a county office, even though the vacancy occurred too late for a nomination to be made in the primary election.

The title of an office to be voted on at the general election should not be printed under the party column where no party nomination for the office has been made, but should be printed under the write-in column.

APPROVED:

J. C. Davis, Jr.
Reviewer

W. V. Geppert
Reviewer

Will D. Davis
Special Reviewer

Davis Grant
First Assistant

John Ben Shepperd
Attorney General

Yours very truly,

JOHN BEN SHEPPERD
Attorney General

By *Mary K. Wall*

Mary K. Wall
Assistant